UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

U<span>NITED</span> S<span>TATES OF</span> A<span>MERICA</span>,

    Plaintiff,

    v.

D<span>R</span>. F<span>ANNY</span> D<span>ELA</span> C<span>RUZ</span>,

    Defendant.
_____/

Case No. 17-mc-50236

U<span>NITED</span> S<span>TATES</span> D<span>ISTRICT</span> C<span>OURT</span> J<span>UDGE</span>
G<span>ERSHWIN</span> A. D<span>RAIN</span>

### O<span>PINION AND</span> O<span>RDER</span> D<span>ENYING</span> D<span>EFENDANT'S</span> M<span>OTION FOR</span> R<span>ECONSIDERATION</span> [18]

### I. I<span>NTRODUCTION</span>

This matter comes before the Court upon Defendant, Fanny Dela Cruz's Motion for Reconsideration [18] of the Court's order denying her objection to garnishment, filed May 13, 2017. The Court does not conduct hearings on motions for reconsideration, E.D. Mich. LR 7.1(f)(1), and accordingly the motion will be resolved solely on the briefing. For the reasons discussed herein, Court **DENIES** Defendant's Motion for Reconsideration [18].

## II. LEGAL STANDARD

United States District Court for the Eastern District of Michigan Local Rule 7.1(h)(3) provides:

> Generally, and without restricting the Court's discretion, the Court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the Court, either expressly or by reasonable implication. The movant must not only demonstrate a palpable defect by which the Court and the parties and other persons entitled to be heard on the motion have been misled but also show that correcting the defect will result in a different disposition of the case.

E.D. Mich. LR 7.1(h)(3). "A 'palpable defect' is 'a defect that is obvious, clear, unmistakable, manifest, or plain.' " *United States v. Lockett*, 328 F. Supp. 2d 682, 684 (E.D. Mich. 2004) (citing *United States v. Cican*, 156 F. Supp. 2d 661, 668 (E.D. Mich. 2001)). "[A] motion for reconsideration is not properly used as a vehicle to re-hash old arguments or to advance positions that could have been argued earlier but were not." *Smith ex rel. Smith v. Mount Pleasant Pub. Sch.*, 298 F. Supp. 2d 636, 637 (E.D. Mich. 2003) (citing *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998)).

## III. DISCUSSION

### A. Defendant's Counsel Mischaracterized Local Rule 7.1(e)(2)(c)

Defendant's primary argument is that the Court should have waited to receive her tardy reply brief before ruling on the motion. Dkt. No. 18. This

argument is based on counsel's misunderstanding of Local Rule 7.1's reply brief deadline.

Eastern District of Michigan Local Rule 7.1(e)(2)(c) provides: "If filed, a reply brief supporting a nondispositive motion must be filed within 7 days after service of the response, but not less than 3 days before oral argument." Defendant's counsel believed that this rule allowed him to respond more than seven weeks after service of the response brief, so long as the reply brief was filed at least three days before oral argument. Dkt. No. 18, p. 2–3 (Pg. ID 121–22).

The Court has reviewed the plain meaning of the rule—i.e., what a reasonable or ordinary person would understand it to mean—in light of the context in which it appears. *See Nat'l Air Traffic Controllers Ass'n v. Sec'y of Dep't of Transp.*, 654 F.3d 654, 657 (6th Cir. 2011) ("Our statutory-interpretation analysis begins by examining 'the language of the statute itself to determine if its meaning is plain.' "). The rule unambiguously states that a reply brief *must* be filed within seven days of service of a response. E.D. Mich. LR 7.1(e)(2)(c). Reply briefs are also due no less than three days before a hearing. *Id*. The only way to give effect to both the seven-day deadline and the three-day hearing deadline is to construe the hearing as being within the seven-day deadline period. *See Nat'l Air Traffic Controllers*, 654 F.3d at 657 ("In doing so, we must 'giv[e] effect to each word and

mak[e] every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.' ").

Further, the rule uses the conjunction "but" to introduce an idea contrasting with the main point, rather than the conjunction "or," which would link alternative options of equal weight. Based on the rule's plain meaning, the portion that states "but not less than 3 days before oral argument" provides an exception to the seven-day deadline when a hearing is to occur before the seven days have lapsed. Accordingly, seven days is the maximum period of time in which a nondispositive motion reply may be filed, absent a request for an extension, and some reply briefs are due earlier when a hearing is scheduled within those seven days.

Defense counsel's proposed interpretation would lead to absurd consequences that would thwart the purpose of the briefing deadlines. *See Psychas v. Trans-Canada Highway Exp., Ltd.*, 146 F. Supp. 11, 13 (E.D. Mich. 1956) ("Another cardinal rule of statutory interpretation is that the statute should be construed so as to give effect to its purpose and obviate absurd consequences."). To read the rule as creating two, alternative reply brief deadlines would effectively eviscerate the seven-day deadline every time a hearing was scheduled. While the non-moving party would be limited to 14 days to file a 25-page response on a nondispositive motion, the moving party could potentially wait months to file a seven-page reply brief. Moreover, the Court would have no ability to adequately

prepare for hearings in advance if every reply brief was filed a mere three days before oral argument. Counsel's interpretation of the Eastern District of Michigan's reply deadline is not reasonable, and does not provide grounds for reconsideration.

Here, Defendant filed her objection to garnishment on March 16, 2017. Dkt. No. 13. The Government filed a timely response on March 23, 2017. Dkt. No. 17. Defendant's reply was due within seven days of March 23, 2017. At no time did Defendant request or receive an extension of time in which to file a reply brief. Although a hearing was set on this matter, judges have discretion to order submission and determination of motions without hearings. E.D. Mich. LR 7.1(f)(2). In this case, a hearing could not be held because Defendant had not objected based on the limited grounds a garnishment hearing may address pursuant to 28 U.S.C. § 3202(d).

**B. Consideration of Defendant's Argument Does Not Result in a Different Disposition**

In her motion for reconsideration, Defendant argues for the first time that her trust payments are exempt from garnishment as a discretionary trust. Dkt. No. 18. Although a "motion for reconsideration is not properly used as a vehicle to . . . advance positions that could have been argued earlier but were not," *Mount Pleasant Pub. Sch.*, 298 F. Supp. 2d at 637, the Court will nevertheless analyze the new issues Defendant raises. For the reasons stated below, the Court does not find

that the trust grants the Trustee uncontrolled discretion, and thus does not qualify as exempt from garnishment.

A federal restitution order is "a lien in favor of the United States on all property and rights to property" as if the liability were for "a tax assessed under the Internal Revenue Code of 1986." 18 U.S.C. § 3613(c). The Supreme Court has noted when examining the statutes that govern tax liens that Congress used broad language so as "to reach every interest in property that a taxpayer might have." *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 720 (1985). "Property" that may be garnished "includes any present or future interest, whether legal or equitable, in real, personal (including choses in action), or mixed property, tangible or intangible, vested or contingent, wherever located and however held (including community property and property held in trust (including spendthrift and pension trusts))." 28 U.S.C. § 3002(12).

The Court looks first to the trust itself and the laws of Michigan, the state that governs it. In Michigan, a discretionary trust does not qualify as the beneficiary's property. *See* MICH. COMP. LAWS § 700.7815. "A beneficiary of a discretionary trust . . . has no property right in a trust interest that is subject to a discretionary trust provision, and has no right to any amount of trust income or principal that may be distributed only in the exercise of the trustee's discretion." *Id*. Michigan defines a "discretionary trust" as a trust where the trustee has the

discretion to determine one or more of the following: (1) whether to distribute trust property to an individual; (2) the amount, if any, of the trust property to distribute to an individual; (3) who will receive trust property; (4) whether the distribution of trust property is from income or principal or both; and (5) when to pay trust property. MICH. COMP. LAWS § 700.7103(d).

Restatement (Second) of Trusts § 155(1), states, "if by the terms of a trust it is provided that the trustee shall pay to or apply for a beneficiary only so much of the income and principal or either as the trustee in his *uncontrolled discretion* shall see fit to pay or apply, a transferee or creditor of the beneficiary cannot compel the trustee to pay any part of the income or principal." (emphasis added). As Michigan courts have stated, this rule "applies only in a situation where the trustee 'may in his absolute discretion *refuse* to make any payment to the beneficiary or to apply any of the trust property for his benefit.'" *Coverston v. Kellogg*, 136 Mich. App. 504, 508, 357 N.W.2d 705, 707 (1984).

Here, the Trust provides as follows:

> PAYMENT OF UNITRUST AMOUNT. In each taxable year of the trust during the unitrust period, the Trustee shall pay to FANNY dela CRUZ, of West Bloomfield, Michigan, (hereinafter "the Recipient"), a unitrust amount equal to Five percent (5.00%) percent of the net fair market value of the assets of the trust valued as of the first day of each taxable year of the trust (hereinafter "the valuation date"). The unitrust period shall be for the lifetime of FANNY dela CRUZ. The first day of the unitrust period shall be the date of Settlor's death and the last day of the unitrust period shall be the date of the Recipient's death. The unitrust amount shall be paid in equal quarterly

> installments at the end of each calendar quarter from income and, to the extent income is not sufficient, from principal. Any income of the trust for a taxable year in excess of the unitrust amount shall be added to principal. If, for any year, the net fair market value of the trust assets is incorrectly determined, then within a reasonable period after the correct value is finally determined, the Trustee shall pay to the Recipient (in the case of an undervaluation) or receive from the Recipient (in the case of an overvaluation) an amount equal to the difference between the unitrust amount(s) properly payable and the unitrust amount(s) actually paid.

Dkt. No. 15-1, pp. 2–3 (Pg. ID 71–72). The trust goes on to state:

> <u>LIMITED POWER OF AMENDMENT</u>. This trust is irrevocable. However, the Trustee shall have the power, acting alone, to amend the trust from time to time in any manner required for the sole purpose of ensuring that the unitrust qualifies and continues to qualify as a charitable remainder unitrust within the meaning of § 664(d)(2) of the Code.

*Id*. at 6 (Pg. ID 75).

First, the Court finds that the trust lacks any provisions granting the Trustee explicit and unlimited authority to refuse to make distributions. In the provision titled "Limited Power of Amendment," the trust states that the Trustee may amend the trust "for the sole purpose" of complying with the charitable remainder unitrust provision of the tax code. *See* 26 U.S.C. § 664(d)(2); Dkt. No. 17-2, p. 11 (Pg. ID 106). To comply with § 664(d)(2), the trust must pay out a rate between five and fifty percent. 26 U.S.C. § 664(d)(2)(A). The Trustee may not choose to make a payment of less than five percent, which would include refusing to pay Defendant. *Id*.

The Trustee similarly lacks unlimited discretion over the term of years that the beneficiary may be paid, which must be either a term of years (not exceeding twenty years), or the live of the beneficiary (as the trust explicitly provided) to comply with § 664(d)(2). *Id*. As changes to the trust may only be made for the sole purpose of compliance with § 664(d)(2), with which the term already complies, the Trustee would not have the discretion to change the term for reasons other than tax code compliance.

Second, the trust does not grant the Trustee the authority to determine the amount of trust property to be paid to Defendant. The trust states that Defendant "shall" be paid at a rate of five percent of trust assets, and only allows limited amendment if this provision were to be out of compliance with § 664(d)(2), which it is not. *See* 17-2, p. 7 (Pg. ID 102).

Third, the trust does not grant the Trustee discretion over who will receive the trust property, as it explicitly named Defendant as the recipient of the unitrust. *Id*.

Fourth, the trust grants the Trustee no discretion over whether the distribution of trust property is from income or principal. The trust provides that payments are to come from income, and only when income is insufficient may payments come from principal. Dkt. No. 17-2, p. 7 (Pg. ID 102). These directives do not grant the Trustee discretion regarding the source of disbursements.

Fifth, the trust speaks explicitly to when trust property should be disbursed. Trust payments began when the settlor died, and last until Defendant's death. The disbursements "shall be paid in equal quarterly installments at the end of each calendar quarter," granting the Trustee no discretion over when to pay Defendant. Dkt. No. 15-1, pp. 2–3 (Pg. ID 71–72).

In sum, the Trustee's discretion is explicitly restrained by the requirements of § 664(d)(2), and the Trustee may only alter the trust for the sole purpose of continued compliance with those requirements. This limited power of amendment is different from the "complete" and "absolute" discretion described by the Michigan Court of Appeals when defining a discretionary trust. *Coverston*, 136 Mich. App. at 508, 357 N.W.2d at 707. Furthermore, the trust curtails the Trustee's discretion through use of the term "shall" in reference to the amount that Defendant is to be paid by the Trustee (five percent) and how often payments are to occur (quarterly). *In re Robert Stout Revocable Trust*, No. 313063, 2014 WL 265553, at *7 (Mich. Ct. App. Jan. 23, 2014) ("Michigan caselaw recognizes that use of the word 'shall' connotes a mandatory directive.").

The trust here does not grant the Trustee the uncontrolled discretion to refuse to make any payment to Defendant. Instead, it provides that the Trustee may make limited adjustments for the sole purpose of compliance with the tax code. Based on the language of the trust, Defendant's quarterly payments do not qualify

as exempt from garnishment. *Cf. United States v. Harris*, No. 16-10152, 2017 WL 1404198 (9th Cir. Apr. 20, 2017) (holding that any current or future distributions from irrevocable, discretionary trusts to a defendant were subject to the continuing writ of garnishment under California law until restitution judgment was satisfied). Defendant has not provided a palpable defect by which the Court was misled. Similarly, Defendant has not shown that the prior motion would have been resolved differently.

### IV. CONCLUSION

For the reasons set forth above, the Court **DENIES** Defendant's Motion for Reconsideration [18].

**IT IS SO ORDERED.**

Dated: May 23, 2017  /s/Gershwin A Drain
Detroit, MI  HON. GERSHWIN A. DRAIN
United States District Court Judge